## UNITED STATES v. MIDGLEY.[1]

*(District Court, E. D. Pennsylvania.    May 20, 1890.)*

1. CUSTOMS DUTIES—WOOL—"MERINO BLOOD, NEAR OR REMOTE."
    In the tariff act of 1883, in the enumeration of wools of the first class, the phrase, "wools of merino blood, near or remote," "remote" is limited to mean within the limit of merino blood requisite to characterize the wool as possessing merino qualities, and adding to the value.

2. SAME—CHANGE OF CLASS—PRESUMPTION.
    Where an article has been finally placed in a class other than that in which it was originally, and the collector brings suit to recover the excess of duty, he is entitled to a presumption that it is rightfully placed in said other class, and the burden of proof is on the defendant to prove that it rightly belonged to the class in which it had been formerly placed.

3. SAME—EVIDENCE—CONFLICTING CLASSINGS BY EXAMINER.
    A wool was originally placed in the third class by the examiner, who afterwards, upon the orders of the appraiser, made another examination, and placed it in the second, and, upon the refusal of the appraiser to indorse, made a third examination, and placed it in the first class. On trial several experts testified, upon seeing the wool for the first time, that it was plainly clothing wool, (first class.) *Held,* the fact of the original judgment of the government examiner was evidence for the defendant as to the "grade" of the wool, and to impeach the reliability of plaintiff's expert testimony produced at the trial.

At Law.

This was an action brought by the United States to recover $3,894.38, alleged to be due as additional duty upon an importation of 221 bales of so-called "Smyrna wool," imported at Philadelphia, April 9, 1889. The wool was entered as carpet wool, and was valued at 5¾ pence per pound, dutiable at 2½ cents per pound. The examiner in the first instance returned the wool as entered in class 3, under 12 cents a pound, and his return was approved by the appraiser as of April 15, 1889. Upon April 26, 1889, a reclassification was made in class 2, under 30 cents a pound, at 10 cents a pound by the examiner, but no approval was entered by the appraiser. Upon May 22, 1889, a further reconsideration and reclassification was made in class 1, under 30 cents a pound, 10 cents a pound, and value advanced to 6¼ pence per pound, and upon this classification the liquidation was made by the collector, and the balance aforesaid alleged to be due. The samples sent to the appraiser's stores for examination remained under the control of the government until liquidation. Protest was made by the importer that the government was bound by the first return of the appraiser, and that the other classifications were unlawful. It was also contended that the importation was bought, sold, and used under the name of "Smyrna wool."

*W. Wilkins Carr,* Asst. U. S. Atty., for plaintiff.

*John G. Johnson* and *Frank Pritchard,* for defendant.

BUTLER, J., *(orally charging the jury.)*    The plaintiff in this case asks the court to say to you:

    "(1) If you believe the article in suit is what is known as clothing wool and of merino blood, immediate or remote, or a wool of like character to any of those mentioned in class No. 1, then your verdict should be for the plaintiff."

    That is correct.

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

"(2) If you believe that the wool in suit is not designated or described in classes two and three of combing wools or carpet wools, then your verdict should be for the plaintiff."

That is also correct.

"(3) It is not necessary that the wool should be identical in its quality with the merino blood wools mentioned in the first classification of the tariff act, but if it is what is usually designated as a clothing wool like those named in the first classification, and possessing the same general quality of those wools, and having merino blood, then it properly falls within the first class, and your verdict should be for the plaintiff."

That is correct.

"(4) Your verdict in this case should be for the plaintiff."

I refuse that point.

By the tariff act of 1883 it is provided as follows:

"All wools * * * shall be divided, for the purpose of fixing the duties to be charged thereon, into three * * * classes: Class one, clothing wools; that is to say merino, mestiza, metz, or metis wools, or other wools of merino blood, immediate or remote, down clothing wools, and wools of like character with any of the preceding, including such as have been heretofore usually imported into the United States from Buenos Ayres, New Zealand, Australia, Cape of Good Hope, Russia, Great Britain, Canada, and elsewhere, and also including all wools not hereinafter described or designated in classes two and three."

"Class two" I need not read, because it is not involved in this case.

"Class three, carpet wools and other similar wools,—such as Donskoi, native South American Cordova Valparaiso, native Smyrna, and including all such wools of like character as have been heretofore usually imported into the United States from Turkey, Greece, Egypt, Syria, and elsewhere."

It may be proper to remark that the wools named in the first clause are wools containing merino blood, fine wools, high-grade wools. All wools containing merino blood, in the language of the statute, near or remote, are within the first clause, and embraced in the first class. The words, "merino blood, immediate or remote," require some remark. The word "immediate" probably requires nothing to be said of it, but the word "remote" does. As used in the statute, it signifies a degree of remoteness that is within the limit of merino blood requisite to characterize the wool, and add to its value. If the remoteness is beyond this, —so great that it does not characterize the wool as possessing merino qualities, does not add to its value,—then it is too remote to be within the meaning of the statute.

In 1889 the defendant imported the wool in question. On its arrival it was sampled and examined by the proper customs officers,— upon whom the duty of classification is devolved by law,—who pronounced it "carpet wool," and consequently placed it in the third class. The defendant paid duty on it accordingly. Very soon thereafter the appraiser, Mr. Leach, becoming doubtful of the correctness of the classification, recalled the return that had been made to the collector, and directed another inspection and examination. The examiner, several days later, reported it as "combing wool," and placed it in the second class.

This being unsatisfactory, also, to the appraiser, a still further examination was made, and it was finally pronounced to be "clothing wool," and was consequently placed in the first class, and subjected to duty accordingly. This higher duty the defendant refused to pay; and the government now sues to recover the difference between the sum paid in pursuance of the first report, and the amount assessed on the final return.

To which class does the wool belong? This is the only question in the case. Does it fall within the description of the first clause read, and consequently belong to class one? or within the description of the third clause, and belong to class 3? There is no suggestion that it is within the second class. You must start on the inquiry with the presumption that it is within the first clause and belongs to class 1. The customs officers having decided that it belongs to this class, their finding must be regarded and accepted as correct until the contrary is proved. You thus observe the burden is on the defendant to prove that the wool does not fall within the description of the first clause, and consequently that it is improperly classified. If, therefore, the defendant has not proved this, your verdict must be against him, for the sum claimed. His contention is that the wool falls within the description of the third clause, and consequently that it belongs to the third class. If the evidence fails to satisfy you he is right in this, his defense fails.

It is only necessary, therefore, to determine whether the defendant has proved that the wool falls within the description of the third clause. Now, let us read this clause again:

"Class three, carpet wools and other similar wools,—such as Donskoi, native South American, Cordova, Valparaiso, native Smyrna, and including all such wools of like character as have been heretofore usually imported into the United States from Turkey, Greece, Egypt, Syria, and elsewhere."

It is proper to observe at this time that the words "native Smyrna," in the light of the evidence before you, may be read "Smyrna," because, according to that evidence, all Smyrna wool is native Smyrna. There is no such thing as "native Smyrna," as contradistinguished from Smyrna wool. According to the plaintiff's testimony, all the wool that is known to the trade as Smyrna wool is native Smyrna. There are not two descriptions of Smyrna wool, one Smyrna and the other native Smyrna; it is all Smyrna wool. So that as far as relates to this case, in view of the evidence, you can disregard the word "native;" if it is Smyrna wool it is native Smyrna wool.

You observe that the clause embraces all "carpet wool," and that it also particularly specifies "Smyrna wool," as a "carpet wool." The defendant contends that the wool before us is "carpet wool," and, furthermore, that it is "Smyrna wool;" that is, that it is "carpet wool" grown in Smyrna. If it is "Smyrna wool," it follows that it is "carpet wool," and belongs to the third class, because the statute makes all "Smyrna wool," "carpet wool." The question is thus reduced to the narrow and single inquiry: Is this "Smyrna wool?" As you have seen, the words "carpet wool," used in this clause, embrace a similar description of wool from many other countries besides Smyrna. The defendant, however, does

not claim that this is "carpet wool from either of such other countries, but asserts and claims that it is Smyrna wool." He imported it from England, he says, as "Smyrna wool," and it came to this country invoiced as "carpet wool."

Does the evidence satisfy you that it is "Smyrna wool?" Many witnesses have been called on the one side and the other to instruct you on the subject. Those called by the defendant pronounce it "Smyrna wool;" in other words, carpet wool from Smyrna. They tell you why they so pronounce it, and speak with great positiveness on the subject. Those called by the plaintiff say it is not "Smyrna wool," just as positively, and give their reasons for saying so. They further say it is a wool of merino blood, and consequently is "clothing wool." Respecting the presence of merino blood, and its quantity, the testimony on the one side and the other is in direct conflict also. The witnesses called generally are men of unusual intelligence, and of high character. Their business as wool dealers, woolen manufacturers, or wool growers has been such as to qualify them to speak intelligently on the subject involved. Their disagreement may seem remarkable; but it must be remembered that they speak from different stand-points, and may reasonably be supposed to feel some bias. It cannot be doubted, however, that they are honest, and believe what they say. I could not aid you by citing the testimony, and dwelling upon it. The duty is on you of determining whether the fact on which the defense rests, to-wit, that this is "Smyrna wool," is proved. If the testimony upon the one side and the other is equally balanced, for and against it, it is not proved. There must be a preponderance of testimony in its favor to prove it.

A fact to which I adverted at the outset, is entitled to some weight probably in deciding this question. You must consider whether it is or not, and, if it is entitled to any, you must determine how much. As it was there said, the government officers, in the first instance, themselves pronounced this wool "carpet wool," treated it as "Smyrna wool," and consequently "carpet wool," placing it in the third class. The examiner may possibly have been influenced in reaching his conclusion by the fact that it was invoiced as "carpet wool." This can hardly be supposed, however, in view of the fact that it was his sworn duty to examine it with great care, and form his judgment from such examination. This report or return was approved by the appraiser, Mr. Leach. He, the appraiser, says, however, he did not examine the wool. Nevertheless this was the action of the government, and was an expression of judgment that the wool was "carpet wool"—a judgment based on examination by a competent officer—selected for this particular duty, because of supposed especial qualifications to perform it correctly, and at a time when there was no controversy, when no feeling had arisen, and when the duty and purpose of the officer was, must have been, to get at the truth, at all events, to make no mistake against the government which he represented. While this judgment and finding did not bind the government, but was subject to revision and correction, if incorrect, the fact that such a judgment was pronounced, after examination, is ev-

idence against the plaintiff,—apparently entitled to some weight in deciding the question before us. Again, when the examiner was requested to make a second examination, a full and particular examination, he reported after some time had elapsed, in effect that it was not clothing wool,—in terms, that it was "combing wool,"—which belongs to the second class, and it was not till the appraiser demurred to this, by declining to indorse, that the examiner placed it in the first class. The fact that the examiner, after a second and presumably very careful examination, found it to be "combing wool," seems to be inconsistent with the testimony of the plaintiff's witnesses, who say that it plainly and distinctly appears to be "clothing wool," from inspection alone,—such as they gave it in your presence. It is for you to say what weight these facts should have. Nevertheless, the question whether this is "Smyrna wool," and consequently "carpet wool," is a question for your determination from all the evidence in the cause bearing upon it. If you find it is "Smyrna wool," your verdict will be for defendant, because if it is "Smyrna wool" it is carpet wool, and belongs to the third class. If you do not so find, your verdict will be for the plaintiff.

The jury disagreed.